UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRIAN VALENTI, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 1:15-cv-1304-WTL-TAB |
| INDIANA SECRETARY OF STATE, in her official capacity; THE INDIVIDUAL MEMBERS of the INDIANA ELECTION COMMISSION, in their official capacities; THE SUPERINTENDENT of the INDIANA STATE POLICE, in his official capacity; THE BLACKFORD COUNTY PROSECUTOR, in his official capacity, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) COMPLAINT—CLASS ACTION ) | |

**First Amended Class Action Complaint for Injunctive and Declaratory Relief**

**Introduction**

1. Indiana Code § 35-42-4-14 (effective July 1, 2015) provides that certain sex offenders, defined by the statute as "serious sex offenders," are prohibited from entering school property. One of the consequences of this is that these persons will be prohibited from voting at their community polling place if it is located on school property. Although Indiana Code § 3-11-10-24 allows such persons to vote absentee by mail, the procedure for voting absentee is complex, prone to error and fraud, and to many, it is an inferior means of exercising their fundamental right to vote. Other methods of voting, specifically by voting absentee at the circuit court clerk's office prior to election day or, in some counties, voting at an alternative vote center, are constitutionally deficient. Brian Valenti is a resident of Blackford County who committed a qualifying sex offense in

1

California more than a quarter of a century ago.  He is registered and would like to vote. The polling place in his community, however, is located on school property.  Because Mr. Valenti is subject to Indiana Code § 35-42-4-14, he is unable to vote in person with his community on election day.  Indiana Code § 35-42-4-14 is unconstitutional and on his own behalf, and on behalf of those similarly situated, he brings this action for declaratory and injunctive relief.

**Jurisdiction, Venue, and Cause of Action**

2. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States

**Parties**

6. The Indiana Secretary of State is Indiana's chief election official, Indiana Code § 3-6-3.7-1, and is sued in her official capacity.  Among other things, the Indiana Secretary of State is required to "perform all ministerial duties related to the administration of elections by the state." Ind. Code § 3-6-4.2-2.  The Office of the Secretary of State contains the Indiana Election Division, which is statutorily obligated to "instruct" county election boards "as to their duties" under state and federal law.  *Id.* § 3-6-4.2-14(a).

7. The Indiana Election Commission is a bipartisan commission consisting of four members appointed by the Governor.  *Id.* § 3-6-4.1-2.  The Commission is required to

"[a]dminister Indiana election laws" and is to "[a]dvise and exercise supervision over local election and registration officers." *Id.* § 3-6-4.1-14(a)(1), (3).

8. The Superintendent of the Indiana State Police is the duly appointed "executive officer" of the Indiana State Police and "has general charge of the work of the department." *Id.* § 10-11-2-6(c). Indiana State Police officers have, "in any part of Indiana, the same powers concerning criminal matters and the enforcement of related laws as sheriffs, constables, and police officers have in their respective jurisdictions" and "[p]olice employees have the power to arrest, without warrant, a person who is committing or attempting to commit in their presence or view a violation of the laws of the state." *Id.* § 10-11-2-21(c)(1), (f).

9. The Blackford County Prosecutor is the duly elected prosecutor of Blackford County. He is required to "conduct all prosecutions for felonies, misdemeanors, or infractions" in Blackford County. *Id.* § 33-39-1-5.

10. Brian Valenti is an adult resident of Hartford City, Blackford County, Indiana.

**Class action allegations**

11. This action is brought by Brian Valenti on his own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure.

12. Class claims are brought against the Indiana Secretary of State, the individual members of the Indiana Election Commission, and the Superintendent of the Indiana State Police (collectively, "State Defendants").

13. The class is defined as:

All "serious sex offenders," as that term is defined by Indiana Code § 35-42-4-14(a), who are, or will be, eligible to vote, and currently cannot, or will not in the future be able to

3

    vote on election day at their community polling place where the polling place is located on school property.

14. For purposes of the class definition and this complaint, election day refers to any type of election, including, but not limited to, primary and general elections. *See* Ind. Code § 3-5-1-2 (defining various types of elections).

15. As defined, the class meets all the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Specifically:

    a. The class is so numerous that joinder of all members is impracticable. The exact size is unknown at the current time but is believed to be large. For example, for the two most populous counties in Indiana, 203 of Marion County's 600 voting precincts (34%) are located on school property and 124 of Lake County's 517 voting precincts (24%) are located on school property. *See* Marion County Elections Board, *2015 Municipal Primary Polling Location List* (available at: http://www.indy.gov/eGov/county/clerk/election/pages/home.aspx) (last visited: Nov. 24, 2015); Lake County Board of Elections and Voter's Registration, *2014 General Polling Locations* (available at: https://www.lakecountyin.org/portal/media-type/html/group/voters/page/default.psml/js_pane/P-13b9cba7c46-107e7;jsessionid=0BE9E7FDA4BA5344341D4AAD4C68F01E) (last visited: Nov. 24, 2015). There are currently 2,222 people registered in the sex and violent offender registry in Marion County and 566 registered in Lake County. Upon information and belief, a majority of them would be classified as "serious sex offenders" and would be subject to Indiana Code § 35-42-4-14. Therefore, the number of class members in Marion and Lake Counties alone are likely to be in the hundreds.

  b. There are questions of law or fact common to the class – namely whether Indiana Code § 35-42-4-14 violates the United States Constitution as applied to the plaintiff and the putative plaintiff class.

  c. The claims of the named plaintiff are typical of those in the class.

  d. Brian Valenti will fairly and adequately represent the interests of the class.

16. The further requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure are met here in that the State Defendants have at all times acted or refused to act on grounds that generally apply to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate for the class as a whole.

17. Additionally, plaintiffs' counsel should be appointed as counsel for the class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

**Facts**

18. Indiana Code § 35-42-4-14 provides:

> (a) As used in this section, "serious sex offender" means a person required to register as a sex offender under IC 11-8-8 who is:
>
> > (1) found to be a sexually violent predator under IC 35-38-1-7.5; or
> >
> > (2) convicted of one (1) or more of the following offenses:
> >
> > > (A) Child molesting (IC 35-42-4-3).
> > >
> > > (B) Child exploitation (IC 35-42-4-4(b)).
> > >
> > > (C) Possession of child pornography (IC 35-42-4-4(c)).
> > >
> > > (D) Vicarious sexual gratification (IC 35-42-4-5(a) and IC 35-42-4-5(b)).
> > >
> > > (E) Performing sexual conduct in the presence of a minor (IC 35-42-4-5(c)).

> (F) Child solicitation (IC 35-42-4-6).
>
> (G) Child seduction (IC 35-42-4-7).
>
> (H) Sexual misconduct with a minor (IC 35-42-4-9).
>
> (I) A conspiracy or an attempt to commit an offense described in clauses (A) through (H).
>
> (J) An offense in another jurisdiction that is substantially similar to an offense described in clauses (A) through (I)."
>
> (b) A serious sex offender who knowingly or intentionally enters school property commits unlawful entry by a serious sex offender, a Level 6 felony.

19. A level six felony, as defined by Indiana Code § 35-50-2-7, carries with it a fixed term between six months and two and one half years in prison and a fine of up to $10,000.

20. Indiana Code § 3-11-10-24(a)(12) provides in part:

> (a) Except as provided in subsection (b), a voter who satisfies any of the following is entitled to vote by mail:
>
> * * * *
>
> (12) The voter is a serious sex offender (as defined in IC 35-42-4-14(a)).

21. In 1988, Brian Valenti, then living in California, committed, and in 1993 he was convicted of, the California offense of "Lewd or Lascivious Acts with Child Under 14 Years." Cal. Penal Code § 288.

22. He has not been convicted of any other sex offenses against children either before or after that time.

23. In 2014, he moved to Hartford City located in Blackford County, Indiana. He has family who lives there.

24. Because Mr. Valenti has been required to register as a sex offender in Indiana, he is subject to Indiana Code § 35-42-4-14(b)'s prohibition on entering school property.

25. Mr. Valenti is registered to vote and intends to vote in future elections.

26. Blackford County has two vote centers where anyone in the county can vote on election day: one located at the Blackford County High School Auxiliary Gym ("High School"), in Hartford City; and the other at the Montpelier Convention Center, in Montpelier, Indiana.

27. Upon information and belief, a vast majority of election-day voters who reside in Hartford City vote at the High School located in Hartford City, as opposed to the vote center in Montpelier.

28. In the past, local candidates have been present outside of the High School greeting voters and handing out literature on election day. They are available if voters would like to ask them questions.

29. Because he cannot enter school property without violating Indiana Code § 35-42-4-14(b), Mr. Valenti cannot vote at the High School.

30. The Montpelier Convention Center is approximately twelve miles away from Mr. Valenti's home

31. Because Mr. Valenti does not have a vehicle that he can drive to Montpelier and there are no buses or taxis for hire, transportation is a significant hurdle for him to vote in Montpelier.

32. The High School, on the other hand, is three miles from Mr. Valenti's home, and he can either walk or get a ride with someone who also votes at the High School.

33. Mr. Valenti also values the opportunity to meet local candidates outside of his community polling place because he has very little access to information them.

34. Local Hartford City candidates are less likely to visit the vote center in Montpelier because their constituents are unlikely to be in Montpelier.

35. Logic dictates that candidates for Blackford County public office are also more likely to spend time at the polling place in Hartford City, which is the county seat for Blackford County. With a population of 6,220 Hartford City has nearly half of Blackford County's 12,766 residents. *See* U.S. Census Bureau, *American FactFinder* (available at: http://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml) (last visited: October 15, 2015). By contrast, Montpelier has a population of 1,805. *Id.*

36. If Mr. Valenti were to vote at the Montpelier vote center, he would also not be able to speak with other Hartford City voters at the polling place about local issues that affect them because a vast majority of Hartford City voters will vote in Hartford City.

37. Mr. Valenti views voting as a celebration of his fundamental constitutional rights, and as something that should be shared publicly with his community on election day.

38. To Mr. Valenti, it feels like he is being banished from his community on election day by being forced to vote in another town where he knows no one.

39. As an alternative, Mr. Valenti may vote absentee, either by mail or in person at the circuit court clerk's office. Voting absentee, however, is an inadequate substitute to voting at his community polling place on election day.

40. In order to vote absentee, the voter must cast an early ballot, more than eight days before election day if voting by mail, *Indiana Code* § 3-11-4-3, and at least one day before election day if done in person, *id §* 3-11-10-26(e).

41. Because absentee voters must vote early, they are deprived of any information pertinent to their vote that surfaces in the late stages of the election campaign, which could affect how they vote.

42. Absentee voters, both those who vote in person and by mail, do not have the opportunity to engage with local candidates and voters outside of their community polling places on election day because they have to vote early. They are also unable to interact with voters in their community on election day.

43. For those voters that view voting with their community on election day as a celebration of their fundamental democratic rights, absentee voting lacks these important expressive and associational aspects that are at the heart of the fundamental right to vote.

44. Voting absentee by mail, the alternative method of voting provided by Indiana Code § 3-11-10-24(a), is also onerous, introducing several additional procedures and risks that a voter does not face when voting in person. First, an absentee voter must submit an absentee ballot application. Ind. Code § 3-11-4-2(a). The application must be received by the county election board before midnight on the eighth day before election day if the application is mailed. *Id.* § 3-11-4-3.

45. If the absentee ballot application is received prior to the deadline, the county election board will mail an absentee ballot to the address stated in the application. *Id.* § 3-11-4-18. The county election board may, however, send the ballot with a request for additional documentation if, for example, the absentee voter has not previously voted in Indiana. *See id.* § 3-7-33-4.5.

46. The absentee voter may then send an absentee ballot to the county election board, but it must be *received* "in time for the board to deliver the ballot to the precinct election board

9

of the voter's precinct before the closing of the polls on election day." *Id.* § 3-11-10-3. In the 2015 municipal primary in Marion County, for example, the election board had to receive absentee ballots by noon on election day. *Absentee Voting By Mail*, The Official Website of City of Indianapolis and Marion County (available at: http://www.indy.gov/eGov/County/Clerk/Election/Voter_Info/beforeed/Pages/Mail.aspx) (last visited Nov. 24, 2015).

47. Because of the strict deadlines for absentee ballots, there is a strong incentive to cast an absentee ballot early. If the absentee voter mails in a ballot early, the voter runs the risk that the ballot will change before election day, for example, in the event that a candidate drops out of an election or if a candidate is succeeded by a new candidate. *See* Ind. Code § 3-11-10-1.5. In order to cast a new ballot, the absentee voter would have to submit a written request to the circuit court clerk and wait for a new ballot. *Id.* The voter's request, however, will only be accepted if "the original absentee ballot has not been delivered to the appropriate precinct" and "the absentee voter's name has not been marked on the poll list." *Id.* § 3-11-10-1.5(b).

48. Mailing in an absentee ballot close to the deadline, on the other hand, runs the risk that the ballot will be delayed by the mail carrier or lost altogether, with no time left for the voter to obtain a replacement ballot.

49. Voting absentee by mail is also inferior to voting in person because voting absentee by mail is subject to a greater risk that the ballot will be rejected, even if the county election board receives the ballot by the deadline. There are numerous reasons why an absentee ballot will be rejected—hurdles not faced by in-person voters. Grounds include:

10

- The absentee ballot affidavit is insufficient or it has not been endorsed by two officials from either the circuit court clerk's office or the county election board.

- The signature on the affidavit does not correspond to the voter's signature furnished to the precinct election board, or there is no signature.

- The completed absentee ballot was sent to the wrong precinct.

- The absentee ballot envelope is open or was opened and resealed.

- The ballot is challenged and the absentee ballot application cannot be found.

*See id.* § 3-11-10-17.

50. Unlike in-person voters, mail-in voters are unable to get assistance from the election workers who are present at polling centers if they have a question or a problem with the ballot.

51. If an absentee voter receives a defective ballot, makes a mistake, damages the ballot, or loses it, the voter must make a written request for another ballot from the circuit court clerk and wait for a new one to arrive before starting the process over again. *See id.* § 3-11-10-1.5.

52. Because absentee ballots are subject to additional procedures, have more grounds for being rejected, and must pass through more hands over a greater period of time before being counted at the precinct, they are subject to a greater risk of fraud by election workers than in-person ballots.

53. To Mr. Valenti, absentee voting, whether by mail or at the clerk's office, is an inferior process to voting in person with his Hartford City community on election day. First, in

addition to registering to vote, Mr. Valenti will need to complete the application for an absentee ballot and ensure that he mails the ballot in to the Blackford County election board more than eight days prior to the election.

54. Second, Mr. Valenti fears that even if he meets the requisite deadlines for submitting an application for an absentee ballot and submitting an absentee ballot, the ballot will be rejected if he makes a mistake on the ballot or affidavit envelope. If he were to vote in person, an election judge could assist him with any questions he might have and furnish him with a new ballot if he makes a mistake.

55. Third, Mr. Valenti believes that there is a greater risk that his absentee ballot will not be counted due to inadvertent error or fraud on the part of election workers.

56. Fourth, and his concerns here apply equally to both methods of absentee voting and voting in Montpelier, Mr. Valenti will not be able to interact with electioneers and local candidates outside of his community polling place. Mr. Valenti would also like to talk to other local voters about local issues that affect them. Mr. Valenti does not have much access to information about local candidates and would benefit greatly from these interactions.

57. Finally, the in-person act of voting on election day at his community polling place, in this case the High School in Hartford City, is something that Mr. Valenti feels is valuable in and of itself. He views voting in person on election day as a celebration of his right to vote and is something that should be shared publicly with his community. Voting absentee, whether by mail or in person the day before election day at the county clerk's office is a poor substitute.

58. Indiana Code § 3-11-8-15 burdens Mr. Valenti's right to vote because he wishes to vote with his community at the only polling places in his community, which is located at a High School.

59. There is no legitimate reason that Mr. Valenti's right to vote should be burdened by prohibiting him from voting at his community polling place election day. School children are not allowed in polling places located on school property unless they are accompanying adult voters, which is true regardless of where a polling place is located. *See id.* § 3-11-8-15(a).

60. Members of the putative class are similarly unreasonably burdened by Indiana Code § 35-42-4-14, which prohibits them from voting in person on election day with their community.

61. At all times defendants have acted under color of state law.

62. Mr. Valenti and the putative class are being caused irreparable harm for which there is no adequate remedy at law.

**Legal claims**

63. Indiana Code § 35-42-4-14 unjustifiably burdens plaintiffs' right to vote without justification, in violation of the First and Fourteenth Amendments to the United States Constitution.

**Requests for relief**

    **WHEREFORE**, plaintiffs request that this Court

        1. Accept jurisdiction and schedule this case for a hearing.

        2. Certify this case as a class action with a plaintiff class as defined above.

3. Declare that Indiana Code § 35-42-4-14, as applied to the plaintiffs, is both unlawful and unconstitutional for the reasons noted above.

4. Enter a preliminary injunction, later to be made permanent, enjoining Indiana Code § 35-42-4-14 to the extent that it bars the plaintiff and class from voting in person with their community on election day.

5. Enter a preliminary injunction, later to be made permanent, enjoining the Secretary of State and the individual members of the Indiana Election Commission to advise local election authorities that Indiana Code § 35-42-4-14 will not be enforced at polling places during an election and that Indiana Code § 35-42-4-14 should not be used as grounds to impede in any way a person's right to vote.

6. Award plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

7. Award all other proper relief.

/s/ Kenneth J. Falk_____
Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN  46202
317.635.4059, x104
<kfalk@aclu-in.org>


/s/ Jan P. Mensz_____
Jan P. Mensz
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN  46202
317.635.4059, x107
<jmensz@aclu-in.org>

*Attorneys for the plaintiff*

**CERTIFICATE OF SERVICE**

      I hereby verify that on this 25th day of November 2015, a copy of the foregoing was filed electronically with the Clerk of this Court. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and the parties may access this filing through the Court's system:

Jefferson S. Garn
Deputy Attorney General
Jefferson.garn@atg.in.gov

Philip A. Gordon
Deputy Attorney General
Philip.gordon@atg.in.gov

Betsy M. Isenberg
Deputy Attorney General
Betsy.Isenberg@atg.in.gov


      /s/ *Jan P. Mensz*
      Jan P. Mensz
      Attorney at Law