UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN VALENTI, on his own behalf and on behalf of a class of those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> INDIANA SECRETARY OF STATE, in her official capacity; THE INDIVIDUAL MEMBERS of the INDIANA ELECTION COMMISSION, in their official capacities; THE SUPERINTENDENT of the INDIANA STATE POLICE, in his official capacity; THE BLACKFORD COUNTY PROSECUTOR, in his official capacity, <br><br> Defendants. | No. 1:15-cv-1304-WTL-TAB |

**Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction**

**Introduction**

Brian Valenti, a resident of Hartford City, Indiana who wishes to vote in future elections, filed this action to enjoin the defendants in this case from enforcing a new Indiana law that would prevent him from voting at his community polling place, due to his conviction of a sex offense in California more than a quarter of a century ago and the fact that the polling place is located on school property. The defendants have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that Mr. Valenti will not be injured by the challenged law because he has alternative methods of voting.[1] But the law is

---

[1] In his initial complaint, Mr. Valenti, by his counsel, incorrectly stated that his only polling place is the one assigned to his voting precinct. This was wrong and counsel for Mr. Valenti apologize for the error, which has since been corrected in Mr. Valenti's First Amended Complaint. As discussed below, however, the ability to vote in another town twelve miles away makes no practical difference to Mr.

1

clear that *any* burden on the right to vote must have sufficient justification and *any* burden is injury. Moreover, the burden here is severe: by denying Mr. Valenti the opportunity to vote with his community on election day, the defendants are denying him the associational and expressive aspects that are at the heart of the constitutionally-protected right to vote, and which each voting alternative lacks. Each alternative also caries practical burdens that Mr. Valenti would not face if he were able to vote at his community polling place in Hartford City. And while the defendants attempt to trivialize the burdens posed by the challenged law, they cannot reasonably argue that there is no burden at all.

The bottom line is that Mr. Valenti wants to enjoy the benefits that other similarly-situated voters enjoy by voting at his community polling place in Hartford City. The challenged law prohibits Mr. Valenti from doing so. This is injury in fact and the defendants' Motion has no merit.

**Standard for Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction**

The defendants' motion to dismiss rests solely on the argument that Mr. Valenti has not been, and will not be, injured by Indiana Code § 35-42-4-14, and therefore, he lacks standing to bring this case. "Because a motion to dismiss for lack of standing is one attacking the district

---

Valenti who has no transportation to that town and who wishes to vote at his community polling place in Hartford City where he lives.

[2] In support of their argument, the defendants cite *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969) and *Indiana Democratic Party v. Rokita*, 458 F. Supp. 775 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) for the proposition that there is "no right to vote in person." (ECF No. 33 at 3-4.) These cases do not support such a broad assertion of law, since any state-imposed burden on the right to vote must first be scrutinized under *Burdick* to determine its constitutionality. *McDonald* involved pretrial detainees seeking to vote absentee—not in person—and even in this pre-*Burdick* case, the court scrutinized the state's justifications for denying detainees an absentee ballot. *McDonald*, 394 U.S. at 806. The court in *Rokita* merely stated that "[v]oting by absentee ballot instead of in person does not, *by itself*, constitute injury in fact," and faulted the plaintiffs for not providing evidence of "actual hardship" on the named individual plaintiffs. *Rokita*, 458 F. Supp. 2d at 813 (emphasis added). Neither the Seventh Circuit nor the Supreme Court offered an opinion on whether the named individuals in the case had sufficiently alleged injury, and all three courts applied *Burdick* to scrutinize the challenged law. Here, Mr. Valenti has not only alleged "actual hardship" but has provided legally-recognized burdens that come

court's subject matter jurisdiction, it is brought pursuant to Rule 12(b)(1)." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 n.8 (11th Cir. 1993) (citation omitted).  In reviewing a motion brought pursuant to Rule 12(b)(1) a court "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor." *Franzoni v. Harmark Corp.*, 300 F.3d 767, 771 (7th Cir. 2002) (quoting *Transit Express, Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001)).  Of course, as a jurisdictional requirement, "plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

**Facts**

*The challenged statute*

Effective July 1, 2015, a new section has been added to the Indiana Code as Indiana Code § 35-42-4-14 provides:

> (a) As used in this section, "serious sex offender" means a person required to register as a sex offender under IC 11-8-8 who is:
> (1) found to be a sexually violent predator under IC 35-38-1-7.5; or
> (2) convicted of one (1) or more of the following offenses:
> (A) Child molesting (IC 35-42-4-3).
> (B) Child exploitation (IC 35-42-4-4(b)).
> (C) Possession of child pornography (IC 35-42-4-4(c)).
> (D) Vicarious sexual gratification (IC 35-42-4-5(a) and IC 35-42-4-5(b)).
> (E) Performing sexual conduct in the presence of a minor (IC 35-42-4-5(c)).
> (F) Child solicitation (IC 35-42-4-6).
> (G) Child seduction (IC 35-42-4-7).
> (H) Sexual misconduct with a minor (IC 35-42-4-9).
> (I) A conspiracy or an attempt to commit an offense described in clauses (A) through (H).

> (J) An offense in another jurisdiction that is substantially similar to an offense described in clauses (A) through (I)."
>
> (b) A serious sex offender who knowingly or intentionally enters school property commits unlawful entry by a serious sex offender, a Level 6 felony.

A level six felony, as defined by Indiana Code § 35-50-2-7, carries with it a fixed term between six months and two and one half years in prison and a fine of up to $10,000. Effective July 1, 2015, those designated as "serious sex offenders" are also entitled to vote absentee by mail. Indiana Code § 3-11-10-24(a)(12) provides in part:

> (a) Except as provided in subsection (b), a voter who satisfies any of the following is entitled to vote by mail:
> \* \* \* \*
> (12) The voter is a serious sex offender (as defined in IC 35-42-4-14(a)).

*The named plaintiff*

Brian Valenti is an adult resident of Hartford City, the county seat of Blackford County, Indiana. (First Am. Compl. ¶ 10.) His conviction for a sex offence in California subjects him to Indiana Code § 35-42-4-14. (*Id.* ¶ 21.)

Mr. Valenti is registered to vote and intends to vote in future elections. (*Id.* ¶ 25.) Blackford County has instituted a "vote center" system in which all voters in the county are permitted to vote in either of two designated vote centers, regardless of where they live. (*Id.* ¶ 26.) The closest vote center, and the one where the vast majority of Hartford City voters go, however, is at the Blackford County High School Auxiliary Gym ("High School"). (*Id.* ¶ 27.) But because he cannot enter school property without violating Indiana Code § 35-42-4-14, Mr. Valenti cannot vote at the High School even though he wants to do so. (*Id.* ¶ 29.)

Barred from voting at his community polling place, Mr. Valenti has three alternatives: (1) vote at the only other vote center in the County, located at the Montpelier Convention Center

4

in Montpelier, Indiana; (2) vote absentee by mail at least eight days before an election; or (3) vote absentee at the circuit court clerk's office at least one day before the election. (*Id.* ¶¶ 26, 39-40.)  Each alternative comes with significant burdens and inherent deficiencies that Mr. Valenti would not face if he were simply allowed to vote at his community polling place in Hartford City.

Voting at the vote center in Montpelier, located approximately twelve-miles away from his home, is simply not a realistic option for Mr. Valenti who does not have a vehicle that he can drive to Montpelier, and where there are no buses or taxis for hire. (*Id.* ¶ 30-31.)  The High School in Hartford City, on the other hand, is three miles from Mr. Valenti's home, and he can either walk or get a ride with someone who also votes at the High School. (*Id.* ¶ 32.)

Even if Mr. Valenti were to find transportation to Montpelier, he would miss out on important benefits that come with voting with his community.  In the past, local candidates have been present outside of the High School on election day, greeting voters and handing out literature. (*Id.* ¶¶ 33-34.)  Local Hartford City candidates, however, have no reason to visit the vote center in Montpelier as their constituents are most likely to vote in Hartford City. (*Id.* at 35.)  Candidates for Blackford County public office are also more likely to spend time at the polling place in Hartford City, which is the county seat for Blackford County.  With a population of 6,220 Hartford City has nearly half of Blackford County's 12,766 residents. *See* U.S. Census Bureau, *American FactFinder* (available at: http://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml) (last visited: Jan. 4, 2016).  By contrast, Montpelier has a population of 1,805. *Id.*

If Mr. Valenti were to vote at the Montpelier vote center, he would also not be able to speak with other Hartford City voters on election day about local issues that affect them because

a vast majority of Hartford City voters will vote in Hartford City. (First Am. Compl. ¶ 36.) To Mr. Valenti, it feels like he is being banished from his community on election day by being forced to vote in another town where he knows no one. (*Id.* ¶ 38.)

Voting absentee by mail is the alternative mode of voting provided by the challenged statute. *See* Indiana Code § 3-11-10-24(a)(12). For Mr. Valenti, however, it is an inadequate substitute to voting at his community polling place on election day. (*Id.* ¶ 39.) First, in addition to registering to vote, Mr. Valenti will need to complete the application for an absentee ballot and ensure that the Blackford County Election Board receives his ballot application at least eight days prior to the election. (*Id.* ¶ 40 [citing Ind. Code §§ 3-11-4-2(a), 3-11-4-3].) Second, Mr. Valenti fears that even if he meets the requisite deadlines for submitting an application for an absentee ballot and submitting an absentee ballot, the ballot will be rejected if he makes a mistake on the ballot or affidavit envelope. (*Id.* ¶ 54.) If he were to vote at his community polling place, an election judge could assist him with any questions he might have and furnish him with a new ballot if he made a mistake. (*Id.*) Third, Mr. Valenti believes that there is a greater risk that his absentee ballot will not be counted due to inadvertent error on the part of election workers. (*Id.* ¶ 55.) Fourth, Mr. Valenti would benefit from receiving information about the candidates and issues on the ballot up until he votes. (*Id.* ¶ 56.) For example, Mr. Valenti would like to talk to people, including electioneers and candidates, outside of polling places. (*Id.*) He wants the right to change his mind at the "last minute." (*Id.* ¶ 41.)

Finally, the in-person act of voting with his community is something that Mr. Valenti feels is valuable in and of itself. (*Id.* ¶ 57.) He views voting in person on election day as a celebration of his right to vote and is something that should be shared publicly with his community. (*Id.*) Although his vote may be counted if he votes absentee, Mr. Valenti feels that

6

this early and private form of voting makes him less connected with the democratic process and less able to express his political voice.  (*Id.* ¶¶ 43, 57.)

Voting absentee at the circuit court clerk's office poses some of the same deficiencies as voting absentee by mail.  *See* Ind. Code § 3-11-10-26.  First, Mr. Valenti would have to vote no later than noon the day before election day, thereby missing important last minute developments in the campaigns.  *See id.* § 3-11-10-26(e).  Second, Mr. Valenti would still not have the opportunity to engage with local candidates and voters outside of his community polling place on election day.  Finally, for those voters that view voting with their community on election day as a celebration of their fundamental democratic rights, as Mr. Valenti does, voting alone at the county court clerk's office at least a day before the election is a second-rate mode of voting.  (*Id.* ¶ 57.)

Mr. Valenti believes that none of the alternative methods of voting allow him to fully exercise his fundamental right to vote without significant burdens or inherent deficiencies.

**Argument**

**I.   The fundamental right to vote is violated if it is burdened without sufficient justification**

The U.S. Supreme Court has stated clearly that voting is a fundamental right that cannot be unduly burdened or abridged.  *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (holding that "since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.").  The Court uses a balancing test to weigh the "character and magnitude of the asserted injury" to the right to vote against the "precise interest put forward by the State as justification for the burden imposed by its rule."  *Burdick*, 504 U.S. at 434 (quoting *Anderson v. Celebrezze*, 460

7

U.S. 780, 789 (1983)).  When the law "severely burdens the First and Fourteenth Amendment rights of voters, the regulation 'must be narrowly drawn to advance a state interest of compelling importance.'"  *Common Cause Indiana v. Individual Members of the Ind. Election Comm'n*, No. 14-3300, 800 F.3d 913, 917 (7th Cir. 2015) (quoting *Burdick*, 504 U.S. at 434).  When the law "imposes only reasonable, nondiscriminatory restrictions upon the rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions."  *Id.* (quoting *Burdick*, 504 U.S. at 434) (internal quotations omitted).  In any case, "[h]owever slight [the] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'"  *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 278, 288–89 (1992)).

**II.     Mr. Valenti's right to vote is burdened because the challenged law prohibits him from voting at his community polling place on election day and this is "injury in fact"**

The only issue at this juncture is not whether Mr. Valenti's stated burden amounts to a constitutional violation under *Burdick*, but whether he has suffered any burden at all.  *See Am. Civil Liberties Union of N.M. v. Santillanes*, 546 F.3d 1313, 1319 (10th Cir.2008) ("[S]tanding is not a proxy for the merits.").  For all the reasons stated above, voting at his community polling place on election day is the only way that Mr. Valenti can fully exercise his franchise and that his denial of this opportunity amounts to a severe burden on his constitutional right to vote.  And while the defendants may quibble over the severity of that burden, they cannot argue that there is no burden at all.  Mr. Valenit's stated burden is injury in fact and the case should proceed to the merits.

**A.     Elements of standing**

To establish standing Mr. Valenti must show three things: (1) that he "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . .

and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotations and alterations omitted). The defendants only challenge the first prong, "injury in fact." The Supreme Court has stated that "injury in fact" is not a demanding standard: "The basic idea that comes out in numerous cases is that an identifiable trifle is enough for standing to fight out a question of principle." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). In the context of a voting rights case, "[a]ny burden on the right to vote . . . constitutes an injury-in-fact for standing purposes. *Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259, 1271 (D. Colo. 2010). The burden imposed by Indiana Code § 35-42-4-14 on Mr. Valenti's fundamental right to vote is far more than a " trifle," and is certainly sufficient to meet the relatively low threshold for injury on a Rule 12(b)(1) motion to dismiss.

### B. Denial of Mr. Valenti's ability to vote at his community polling place on election day is "injury in fact"

The defendants err in arguing that Mr. Valenti's alleged injury, namely being prohibited from voting at his community polling place on election day, is not recognized by federal courts.[2]

---

[2] In support of their argument, the defendants cite *McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802 (1969) and *Indiana Democratic Party v. Rokita*, 458 F. Supp. 775 (S.D. Ind. 2006), *aff'd sub nom. Crawford v. Marion County Election Board*, 472 F.3d 949 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008) for the proposition that there is "no right to vote in person." (ECF No. 33 at 3-4.) These cases do not support such a broad assertion of law, since any state-imposed burden on the right to vote must first be scrutinized under *Burdick* to determine its constitutionality. *McDonald* involved pretrial detainees seeking to vote absentee—not in person—and even in this pre-*Burdick* case, the court scrutinized the state's justifications for denying detainees an absentee ballot. *McDonald*, 394 U.S. at 806. The court in *Rokita* merely stated that "[v]oting by absentee ballot instead of in person does not, *by itself*,

9

(ECF No. 33 at 5.)  Numerous cases have not only recognized that voting with one's community on election day is advantageous, but that inhibiting this manner of voting is injury for purposes of standing.  After all, the right to vote implicates the right to associate.  *See, e.g.*, *Williams v. Rhodes*, 393 U.S. 23, 30 (1968) (finding that "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively" are protected by the First Amendment).  In *American Civil Liberties Union of New Mexico v. Santillanes*, 506 F. Supp. 2d 598 (D.N.M. 2007), *rev'd on other grounds*, 546 F.3d 1313 (10th Cir. 2008), for example, the plaintiffs argued that they wanted to vote in person at their precinct polling places, as opposed to via absentee ballot, because of "their interest in obtaining additional information about candidates which does not become available until just before election day, their interest in publicizing or displaying their exercise of their right to vote to other members of their communities, and their interest in avoiding the risk that an absentee ballot will not be received or counted."  *Santillanes*, 506 F. Supp. 2d at 621-22.  The court held that "[f]or purposes of establishing their standing to sue, Plaintiffs . . . have identified distinct, palpable reasons why . . . [the challenged law] may cause them to be treated less favorably than other similarly situated voters" and therefore the "Plaintiffs have shown a realistic danger or threat of injury to their legally protected interests in voting in-person at polling places on future municipal election days, on terms that are equal with other, similarly situated voters."  *Id.* at 622-23.  The challenged statute prohibits Mr. Valenti from

---

constitute injury in fact," and faulted the plaintiffs for not providing evidence of "actual hardship" on the named individual plaintiffs.  *Rokita*, 458 F. Supp. 2d at 813 (emphasis added).  Neither the Seventh Circuit nor the Supreme Court offered an opinion on whether the named individuals in the case had sufficiently alleged injury, and all three courts applied *Burdick* to scrutinize the challenged law.  Here, Mr. Valenti has not only alleged "actual hardship" but has provided legally-recognized burdens that come with not being able to vote.  Of course, determining the constitutionality of the state-imposed burdens in this case is premature at this stage.

voting at the High School in Hartford City together with similarly-situated voters in his town. This is injury in fact.

In *Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004), the Seventh Circuit also stressed the advantages of receiving information pertinent to one's vote "that surfaces in the late stages of the election campaign" and the ability to "get assistance from the election judges if [the voter] has a problem with the ballot." *Griffin*, 385 F.3d at 1131.  Mr. Valenti would only experience these advantages if he is permitted to vote on election day, a benefit incurred by other similarly-situated voters in his community.

None of the other methods of voting provide the same benefits as voting at one's community polling place.  Voting at the vote center in Montpelier is deficient because it deprives Mr. Valenti the ability to vote with his community.  Hartford City voters and candidates running for municipal office are by and large likely to vote and campaign in Hartford City.  (First Am. Compl. ¶¶ 34-35, 36.)  Other Hartford City voters, and the politicians courting their votes, are also most likely to congregate and vote at the High School in Hartford City, if nothing else than for its convenience and the fact that it is the county seat for Blackford County.  Mr. Valenti, therefore, is effectively being banished to another town to vote, where he knows no one, and where, particularly in local elections, he has no opportunity to commune with those that care about the local issues that affect him.  Mr. Valenti also believes that voting is a celebration of one's right to vote and constitutional rights more generally, and it should be shared publicly with his community.  Voting in Montpelier denies him these important associational and expressive aspects that are at the heart of the fundamental right to vote. *see Williams*, 393 U.S. at 30.

On a more practical level, the most obvious problem with this option is that Mr. Valenti does not have a vehicle that he can drive to Montpelier and there are no public means of

transportation.  (First Am. Compl. ¶ 31.)  The High School in Hartford City, on the other hand, is within walking distance of Mr. Valenti's home and he can get a ride with other community voters who plan to vote at the High School.  (*Id.* ¶ 32.)  Asking someone, who likely works during the day, to drive Mr. Valenti four times the distance to Montpellier, wait for him to vote, and drive back, each time he wants to vote is a substantial and unjustifiable burden.  The fact that Mr. Valenti technically has an alternative, but that alternative poses burdens not born by other voters is sufficient to establish injury for purposes of standing.  *See Common Cause/Georgia*, 406 F. Supp. 2d 1340, 1351-52 (11th Cir. 2009) (finding that requiring voters "to obtain photo identification before they can vote, and the imposition of that burden is an injury sufficient to confer standing regardless of whether [the plaintiffs] are able to obtain photo identification").

Voting absentee by mail similarly deprives the voter of the ability to vote publicly and with one's community, the assistance of election judges, and information leading up to the election.  *See Griffin*, 385 F.3d 1131; *Santillanes*, 506 F. Supp. 2d at 621-22.  Voting absentee also imposes procedural burdens not born by the in-person voter on election day.  The court in *Common Cause/Georgia* cited several reasons why "absentee voting simply is not a realistic alternative to voting in person" and therefore "does not relieve the burden on the right to vote": (1) in order for the vote to count, it must be *received* (not merely post marked) by the registrar in the voter's district before 7:00 pm on election day; (2) the absentee voter must plan sufficiently enough ahead to request an absentee ballot and receive it in time; (3) the absentee voter must complete the ballot correctly; and (4) the voter must know in advance that voting absentee is even an option, something that was not publicized at all by the state.  *Common Cause/Georgia*, 554 F.3d at 1364-65.[3]  The regulations for voting absentee in Indiana suffer from the same

---

[3]  After the court granted a preliminary injunction, the Georgia legislature passed a new version of its photo ID voting law which was upheld by the court after a bench trial was held and the court concluded

12

inherent defects identified in *Griffin* and the procedural burdens recognized in *Common Cause/Georgia*, making it a constitutionally deficient substitute.

Voting absentee at the circuit clerk's office fairs no better because a voter must still vote before election day, depriving him of last minute campaign developments, and separately from fellow voters and the candidates that court them.

None of the three alternative modes of voting relieve the substantial burden the challenged statute places on Mr. Valenti's fundamental right to vote. Mr. Valenti's injury is real and well beyond the "trifle" necessary to establish standing. The defendant's Motion should be denied in its entirety.

**Conclusion**

The defendants' motion to dismiss rests solely on the assertion that Mr. Valenti's right to vote is not burdened in any way because he has three alternative methods of voting. But none of these alternatives match the benefits that Mr. Valenti gets from voting at the High School: the associational and expressive rights that come with voting with his community on election day; the ability to receive late-breaking campaign developments; the ability to meet candidates and electioneers outside the High School; and the ability to commune with other voters from his community. The other methods of voting also impose their own unique burdens on Mr. Valenti,

---

that the photo ID law did not in fact pose an undue burden on voters. *Common Cause/Georgia v. Billups*, 504 F. Supp. 2d 1333 (N.D. Ga. 2007), *order vacated on other grounds and reentered*, 554 F.3d 1340 (11th Cir. 2009). In the interim, the Supreme Court in *Crawford* similarly found that Indiana's photo identification requirement was not a severe burden on in-person voting. *Crawford.*, 553 U.S. at 181. Neither decision, however contradicts the basic point made in *Common Cause/Georgia* that absentee voting does not relieve a severe burden on in-person voting; the Court in *Crawford* simply found that the photo ID requirement at issue in that case, a requirement for all voters, was not a severe enough burden on in-person voting to outweigh the benefits of the law. *Id.* at 198-200 (plurality decision). Unlike *Crawford* or *Common Cause/Georgia*¸ the defendants here are completely barring Mr. Valenti from voting in the manner in which most voters in his community choose to vote—at High School on election day. This complete prohibition is far more than a mere inconvenience to Mr. Valenti and the state-imposed burden must be properly scrutinized under *Burdick*.

including requiring him to find transportation to a vote center located in another town twelve-miles away, and imposing a variety of administrative hurdles that a voter must overcome just to have his mail-in ballot counted.  The U.S. Supreme Court has held that "since the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, *any* alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized."  *Reynolds v. Sims*, 377 U.S. 533, 562 (1964) (emphasis added).  Mr. Valenti has more than satisfied the injury requirement for standing purposes, and the Court should allow his claim to proceed so that Indiana Code § 35-42-4-14 is given the careful and meticulous scrutiny the U.S. Constitution requires.

*/s/ Jan P. Mensz*_____
Jan P. Mensz
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN  46202
317.635.4059, x107
jmensz@aclu-in.org

*/s/ Kenneth J. Falk*_____
Kenneth J. Falk
ACLU of Indiana
1031 E. Washington St.
Indianapolis, IN  46202
317.635.4059, x104
<kfalk@aclu-in.org>

*Attorneys for the plaintiff*

**CERTIFICATE OF SERVICE**

   I hereby verify that on this 6th day of January 2016, a copy of the foregoing was filed electronically with the Clerk of this Court. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system and the parties may access this filing through the Court's system:

 Jefferson S. Garn
 Philip A. Gordon
 Deputy Attorneys General
 Jefferson.garn@atg.in.gov
 Philip.gordon@atg.in.gov


                 /s/ *Jan P. Mensz*
                 Jan P. Mensz
                 Attorney at Law