UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN VALENTI, on his own behalf and on behalf of a class of those similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:15-cv-1304-WTL-TAB |
| INDIANA SECRETARY OF STATE, in her official capacity; THE INDIVIDUAL MEMBERS of the INDIANA ELECTION COMMISSION, in their official capacities; THE SUPERINTENDENT of the INDIANA STATE POLICE, in his official capacity; THE BLACKFORD COUNTY PROSECUTOR, in his official capacity, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

Mr. Valenti's case at first rested on an assertion that the State of Indiana is violating his right to vote. Now his case is a request for this Court to enforce his wish to be at a particular place on a particular day because others may be voting there on that day. No court has recognized such a wish as supporting a cognizable cause of action.

Mr. Valenti, after amending his complaint and in response to the motion to dismiss, asserts that "voting at his community polling place on election day is the only way that Mr. Valenti can fully exercise his franchise and that his denial of this opportunity amounts to a severe burden on his constitutional right to vote." Dkt. 34, p. 8. As noted in the defendants' motion to dismiss, Mr. Valenti challenges a law,

Indiana's new sex offender law (Indiana Code § 35-42-4-14), that does not stop him from exercising his right to vote—fully or otherwise. Accordingly, Mr. Valenti has not been harmed, he lacks standing, and his case should be dismissed.

**Mr. Valenti has a number of voting options.**

A state may permanently disenfranchise voters without violating the Constitution. *See, e.g., Johnson v. Governor of State of Florida,* 405 F.3d 1214, 1217 (11th Cir. 2005) ("a state's decision to permanently disenfranchise convicted felons does not, in itself, constitute an Equal Protection violation.") (*citing Richardson v. Ramirez,* 418 U.S. 24, 53–55, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974)). But Mr. Valenti argues that Indiana's much less drastic step runs afoul of the United States Constitution. While the Supreme Court in *Burdick v. Takushi*, 504 U.S. 428 (1992), recognized that voting is a fundamental right that cannot be unduly burdened or abridged, courts have recognized that states may limit a felon or ex-felon's access to a ballot. For example, the Supreme Court went so far as to hold that Illinois' scheme for providing absentee ballots to some voters did not violate the Constitution although it did not provide absentee ballots to prisoners. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 810-11, 89 S. Ct. 1404, 1409-10, 22 L. Ed. 2d 739 (1969). Later, the Supreme Court held that a State's scheme may violate the Constitution, but a problem arises if no alternative means of voting are made available. *O'Brien v. Skinner*, 414 U.S. 524, 533 (1974).

But courts, including the *Burdick* Court, have recognized that "[c]ommon sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections." Here we are not facing a

straightforward election law that is being challenged. Rather, the challenged statute, Indiana Code § 35-42-4-14, is not a statute aimed at narrowing, broadening, or redefining voting rights in Indiana. In fact, the statute has no deliberate effect on any voting rights, but rather was implemented with a purpose legitimately related to the state's interest in protecting children.

This statute and the greater Indiana's election scheme provide qualified voters, even those who are registered as serious sex offenders, with many voting options. Mr. Valenti asserts that Indiana's new sex offender statute burdens his right to vote by not allowing him to vote at one Vote Center in Hartford City on election day. Dkt. 34, p. 4. But Mr. Valenti can vote in person; he can vote by absentee ballot; he can vote at a vote center that is a mere twelve miles away from his home. Mr. Valenti now acknowledges that he lives in a "Vote Center" county, and consequently can vote in person because there are no traditional precinct polling places in the county, and, while one of the vote centers is at a school, the other is at a civic center, where Mr. Valenti is free to vote in person. Dkt. 22.

Mr. Valenti now seems to argue that he not only has a right to vote in person, but the right to vote at a certain place on a certain day. There is no right to vote in person. *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 809, 89 S. Ct. 1404, 1409, 22 L. Ed. 2d 739 (1969); *Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 813 (S.D. Ind. 2006) *aff'd sub nom. Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949 (7th Cir. 2007) *aff'd*, 553 U.S. 181, 128 S. Ct. 1610, 170 L. Ed. 2d 574 (2008). Mr. Valenti, in a footnote in his response, broadly argues that these cases do not hold that there is no right to vote in person, merely arguing that no

court has held explicitly that there is no right to vote in person. Dkt. 34, p. 2. But Mr. Valenti cites no case that recognizes a right to vote in person. The bottom line is that Mr. Valenti appears to concede no court has recognized such a right. In fact, some states have no in-person voting at all; several states (Colorado, Oregon, and Washington) conduct elections by mail only. http://www.ncsl.org/research/ elections-and-campaigns/absentee-and-early-voting.aspx#Footnote (b) (last visited January 25, 2016). By Mr. Valenti's logic, someone in Colorado, Oregon, or Washington would be burdened because he would rather associate with other voters on Election Day. No court has taken such an expansive view of the right to vote to find burdens whenever the election mechanisms do not fit a voter's particular view of how an election should be run. Indiana law provides Mr. Valenti several ways to cast an effective vote, none of them inferior to another. Only one place is unavailable to him, and the number of other options means that he has not been burdened, and, consequently, his case should be dismissed.

**No cases cited by Mr. Valenti support his expansive reading of the Constitutional right to vote.**

Mr. Valenti argues that the "defendants err in arguing that Mr. Valenti's alleged injury, namely being prohibited from voting at his community polling place on election day, is not recognized by federal courts." Dkt. 34, p. 9. Mr. Valenti looks to a few cases for support, but those cases do not help him.

First, Mr. Valenti cites *Williams v. Rhodes* to support his argument that "the right to vote implicates the right to associate," and that "[n]umerous cases have not only recognized that voting with one's community on election day is advantageous,

but that inhibiting this manner of voting is injury for purposes of standing. . ." 393 U.S. 23, 30 (1968). But any "associational" aspect of a right to vote discussed in *Williams* is distinct from the right to vote itself. Mr. Valenti cites a limited portion from *Williams*: "the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." Dkt. 34, p. 10, citing *Williams*, 393 U.S. at 30. But the rest of the sentence, the part Mr. Valenti leaves out, illustrates how far Mr. Valenti has strayed from his initial argument that his right to vote is being burdened: "In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." *Id.* The Supreme Court in *Williams* faced two rights, the right to vote and the right to associate. Mr. Valenti here raises only an issue related to his right to vote, and nothing Mr. Valenti complains about infringes on his right to cast his vote effectively.

*Williams* did not hold that there is some kind of penumbra emanating from the right to vote that demands that a state must allow a voter to be where he or she wants to be on a particular day. There is a right to vote, and there is a right to associate. Mr. Valenti does not assert that he cannot cast an effective vote. He just wants to cast it in a particular way, and no court has recognized the right to do that.

Mr. Valenti next looks to *American Civil Liberties Union of New Mexico v. Santillanes*, 506 F.Supp.2d 598 (D.N.M. 2007), a New Mexico case reversed by the

Tenth Circuit. *Rev'd sub nom. The Am. Civil Liberties Union of New Mexico v. Santillanes*), 546 F.3d 1313 (10th Cir. 2008). But the case does not even address the question here because in that case the standing question was about the different identification requirements for those voting in person versus those who vote absentee—that was the equal protection issue. But, in the end, that does not even matter. Any persuasive value this case may have had was lost when the Tenth Circuit reversed the district court's decision. *The Am. Civil Liberties Union of New Mexico v. Santillanes*, 546 F.3d 1313, 1320-21 (10th Cir. 2008).

Lastly, Mr. Valenti looks to *Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004). Mr. Valenti plucks from that case a few snippets from the decision about some perceived problems with absentee ballots. But the court did not come anywhere close to recognizing any absentee ballot deficiency, recognizing the "quintessentially" "legislative judgment" that permits absentee ballots, acknowledging that in Oregon all ballots are absentee. *Id.* at 1131.

**Mr. Valenti's right to vote has not been burdened.**

At bottom, there is no constitutional right at issue. Mr. Valenti resorts to claiming a hardship based on his personal circumstances, his claim that he does not own a vehicle, and allegedly does not have access to public transportation. Dkt. 34, p. 11. The burden Mr. Valenti alleges is not implicated by a constitutional right, but is purely self-imposed by his own personal circumstances: his criminal history, and his subjective concerns related to traveling twelve miles to a polling place instead of three. The reality is that early voting and absentee voting are not inferior, but widely accepted, and in fact sometimes the preferred method of voting in certain

states (e.g., Oregon, Washington, Colorado). These voting options have been validly and constitutionally imposed by the legislature and upheld by courts for the benefit of registered voters. *See, Id.* (citing state legislation permitting absentee voting. *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169, 1176 (9th Cir. 2001) (holding Oregon's voting scheme legal).

One vote center in Blackford County is at a school, and that is the only place Mr. Valenti cannot vote. That is Mr. Valenti's asserted burden. But if that is how a court finds a burden—by looking for a subjective hardship—the right to vote expands beyond all recognition. Placing one vote center in Hartford City and one in Montpelier does not burden the right to vote of someone living in the southeast corner of Blackford County, although the distance would be about the same that Mr. Valenti asserts he would have to travel to get from Hartford City to Montpelier. Likewise, Mr. Valenti's right to vote is not burdened when there are several choices available to him by which he may exercise his right to vote.

Further, a resident of the town of Dunkirk, Indiana, which straddles the county line between Jay and Blackford counties, has not had her right to vote burdened if she feels a closer, subjective kinship to those in Jay County despite living in Blackford County. In other words, the subjective hardship that Mr. Valenti asserts is not a burden recognized by the United States Constitution. And that is the kind of burden necessary for Mr. Valenti's case to go forward. Such a subjective test for a burden would be unworkable.

\* \* \* \*

Mr. Valenti's response verifies that this case is not about the right to vote, but about Mr. Valenti's desire to be present at a school on a certain day, a desire unrecognized by any federal court as supporting a lawsuit. Mr. Valenti argues that the only way he can "fully" exercise his right to vote is by voting at one place on a certain day. Dkt. 34, p. 8. Mr. Valenti has cited no case that explains full or less full voting. Instead, a right to vote is about casting an effective ballot. And Indiana provides Mr. Valenti with plenty of convenient ways to cast such a ballot. He has not been injured, so his lawsuit should be dismissed.

Respectfully submitted,

GREGORY F. ZOELLER
Indiana Attorney General
Attorney No. 1958-98

Date: January 25, 2016        By: *s/ Jefferson S. Garn*
Jefferson S. Garn
Deputy Attorney General
Attorney No. 29921-49

OFFICE OF INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6292
Fax: (317) 232-7979
Email: jefferson.garn@atg.in.gov

**CERTIFICATE OF SERVICE**

I certify that on January 25, 2016, a copy of this ***Reply in Support of Motion to Dismiss First Amended Complaint*** was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    Kenneth J. Falk
    ACLU OF INDIANA
    kfalk@aclu-in.org

    Jan P. Mensz
    ACLU OF INDIANA
    jmensz@aclu-in.org

    Gavin M. Rose
    ACLU OF INDIANA
    grose@aclu-in.org

    *s/ Jefferson S. Garn*
    Jefferson S. Garn
    Deputy Attorney General
    *Counsel on behalf of Defendants*

OFFICE OF INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Telephone:  (317) 232-6292
Fax:  (317) 232-7979
Email:  jefferson.garn@atg.in.gov