UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN VALENTI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:15-cv-1304-WTL-MPB |
| ) | |
| INDIANA SECRETARY OF STATE, in her ) | |
| official capacity, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Plaintiff, Brian Valenti, challenges Indiana's sex offender statute, Indiana Code § 35-42-4-14, as an unreasonable burden upon his right to vote in violation of his rights under the First and Fourteenth Amendments of the United States Constitution. The parties have submitted cross motions for Summary Judgment, have responded to both Motions for Summary Judgment, and Defendants now file this Reply brief in Support of their Motion for Summary Judgment. Despite Plaintiff's arguments to the contrary, Plaintiff's right to vote has not been unreasonably burdened by Indiana Code § 35-42-4-14, and he may still exercise his voting rights in a manner valid under the Constitution. Further, the minor burden imposed upon him is substantially outweighed by the State's interest in protecting children from sexual predators.

1

# ARGUMENT

Defendants note that the issues herein have been briefed extensively and therefore incorporate in this Reply, all arguments expanded upon in their own Memorandum in Support of Summary Judgment and in their Response to Plaintiff's Motion for Summary Judgment. (ECF 65; ECF 73.)

Plaintiff's Response Memorandum in Opposition to Defendants' Motion for Summary judgment and Reply Memorandum in Support of His Motion for Summary Judgment centers on his contention that once a vote center is established near his home, his right to vote at that center cannot be burdened without justification. (ECF 75, p. 5.) He continues to argue that the burden imposed upon his voting rights is severe and unjustified, despite the multitude of voting options available to him. *Id.* Plaintiff further argues the blanket ban does not survive the balancing test in *Burdick v. Takushi*, 504 U.S. 428 (1992).

However, the protection of children is a government interest of paramount importance and Indiana Code § 35-42-4-14 is justified because it keeps sex offenders out of our schools. The State's interest in protecting children from sex offenders substantially outweighs the minimal burden imposed on Plaintiff's voting rights. That burden is further relieved by the various alternative methods of voting offered under Indiana law. As the burden upon Plaintiff's right to vote is less than severe, the State's interests are given more deference and do not require a narrow tailoring analysis, and the challenged statute is valid under the United States Constitution.

### A. The burden imposed by Indiana Code § 35-42-4-14 upon Plaintiff's voting rights is minimal.

Plaintiff maintains his voting rights have been burdened significantly because he cannot vote at the vote center nearest to his home, which he has argued is the most popular voter center for residents of Hartford City.[1] (ECF 75, p. 3.) The burden imposed by Indiana Code § 35-42-4-14, being unable to vote at the Blackford County High School as he meets the definition of "serious sex offender," is alleviated by the other methods Plaintiff may utilize in order to vote. First, Plaintiff may vote at the other vote center in Blackford County, the Montpelier Civic Center; second, he may vote by in-person absentee ballot at the county clerk's office near his home; and, finally, he may vote by mail-in absentee ballot. (ECF 7-9.) Plaintiff has other options to exercise his right to vote with minimal burden. The State's justification in keeping sex offenders away from school property and protecting children substantially outweighs Plaintiff's mere inconvenience of utilizing the multiple other voting options available to him.

Under the flexible *Burdick* standard, "the rigorousness of [the] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). The severity of the burden of the law impacts the level of scrutiny a court then applies. *One Wisc. Institute, Inc. v. Thomsen*, 2016 WL 4059222, *26 (Wisc. W.D. July 29, 2016). Here, Plaintiff's burden does not reach beyond mere inconvenience; it is therefore not deemed to be severe. (ECF 65, pp. 11-6; ECF 73 pp. 3-

---

[1] This argument is unsupported by citation to any source and is simply assumed.

13.) As the burden upon Plaintiff's right to vote is less than severe, the State's interests are given more deference and do not require a narrow tailoring analysis. *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). When the state imposes a severe restriction on the right to vote, then "the regulation must be narrowly drawn to advance a state interest of compelling importance." *Id.* (quoting *Burdick*, 504 U.S. at 434) (citations and internal quotation marks omitted). "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.* (quoting *Anderson*, 460 U.S. at 788). A severe burden must go beyond a "mere inconvenience." *Harlan v. Scholz*, 2016 WL 5477103, *3 (N.D. Ill.. Sept. 27, 2016) (quoting *Crawford v. Marion County Election Board*, 553 U.S. 181, 205 (2008) (Scalia, J. concurring)).

Plaintiff argues that by the very establishment of a vote center near his home, he is entitled to vote there, and that the State cannot burden his voting rights at that specific vote center without sufficient justification. (ECF 75, p. 5.) However, Plaintiff does not have a constitutional right to vote in a particular location in a particular manner. *See Indiana Democratic Party v. Rokita*, 458 F.Supp.2d 775, 813 n. 56 (S.D. Ind. 2006) (citing *Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004) ("Voting by absentee ballot instead of in person does not, by itself, constitute an injury in fact since there is no established constitutional right to vote in person."))

The cases Plaintiff cites in support do little to advance his arguments to the contrary. The Plaintiff cites to *One Wisconsin*, a case currently on appeal, where Plaintiff

4

contends the district court rejected a similar argument. *One Wisconsin*, 2016 WL 4059222, at *27. The present case is easily distinguishable from *One Wisconsin*. The plaintiffs in *One Wisconsin* were faced with severe, systemic limitations in voting. For example, limitations were placed on locations and hours which made it difficult for many voters, who were eligible to vote absentee, to exercise that right to vote; as well as documentation and identification requirements, challenges in proving residency requirements for college students, and student voter registration cutbacks. *Id.* at 26-44. In striking contrast, Plaintiff in this case is prohibited from voting at one vote center while being afforded the opportunity to use another vote center in his county, to vote by mail-in absentee ballot, or to vote by in-person absentee ballot.

The *One Wisconsin* court found that once a state established an opportunity to exercise a right, it must administer the privilege in a manner sufficient under the Constitution. *Id.* at 28. But, notably, the court did not declare that an individual has an unconditional right to exercise their voting rights at a vote center closest to one's home or where a majority of the community purportedly gathers to vote. Defendants have repeatedly asserted that Indiana Code § 35-42-4-14 is administered in a constitutional manner and is justified by the need to protect schoolchildren. Further, the burdens imposed upon Plaintiff are alleviated by the voting options available under Indiana law. In the present case, Plaintiff is not faced with the systemic hardships as the plaintiffs in *One Wisconsin*. The State's interest in protecting children outweighs Plaintiff's minimal burden upon his voting rights.

The other case Plaintiff cites, *Veasey v. Perry*, 71 F.Supp.3d 627 (S.D. Tex. 2014) *vacated in part, rev'd in part Veasey v. Abbot*, 830 F.3d 216 (5th Cir. 2016), regarded a challenge to a Texas voter ID law which would have required those without a valid ID to vote by mail or cast a provisional ballot which would have required later verification of their identity. *Id.* at 687. The Texas district court discussed what they determined inequalities in mail-in voting and the provisional ballots, and found that the law was unconstitutional under the *Burdick* test. *Id.* at 693.

However, the opinion in *Veasey* should not be followed here because the opinion is nonbinding upon the Southern District of Indiana and the Fifth Circuit, tellingly, vacated the district court's ruling on the First and Fourteenth Amendment claims, dismissing the claims.

> [I]t is unnecessary for the en banc court to address this issue, and we need not and do not decide whether SB 14 violates the First and Fourteenth Amendments by placing an unconstitutional burden on the right to vote. We therefore vacate the district court's determination on this issue and dismiss Plaintiffs' First and Fourteenth Amendment claims.

*Veasey v. Abbott*, 830 F.3d 216, 265 (5th Cir. 2016), *cert. denied,* 137 S. Ct. 612 (2017) (internal citations omitted). Moreover, no portion of the *Veasey* opinions noted a constitutional right to be at a specific polling location or vote center to discuss issues with fellow voters. While Plaintiff and others may view voting in a specific location a celebration of his community, there is no such constitutional right for a convicted sex offender to participate in such a gathering in a specific location.

Plaintiff also argues that he is further burdened because the law prevents him from engaging in discussions with political candidates, electioneers, and other voters.

6

(ECF 75, p. 7.) Defendants, again, point out that nothing in Indiana Code § 35-42-4-14 prevents Plaintiff from discussing issues with voters, engaging with electioneers, nor meeting candidates. Plaintiff rebuts Defendants' contentions by stating that Plaintiff's "opportunities to engage in conversations with the same candidates, electioneers, and other local voters . . . is highly speculative." (ECF 75, p. 7.) Defendants' position, however, is not mere speculation, but is supported by Plaintiff's own deposition testimony. Indeed, Plaintiff has stated that these candidates have shown up at his own front door. (Valenti Dep., pp. 41:8-15.) Plaintiff has produced no evidence that these candidates would not be campaigning near the county clerk's office prior to Election Day when he might exercise his right to vote by absentee in-person ballot. Curiously, Plaintiff notes that electioneering may not even occur within 50 feet of the entrance of a polling place, which undercuts his argument that he needs to be on school property to engage in these discussions. (ECF 75, p. 14 (citing Ind. Code §§ 3-11-8-15(a); 3-5-2-10; 3-11-8-16.)) Nothing in Indiana Code § 35-42-4-14 prevents the Plaintiff from engaging with these candidates in person, by telephone, or by email. In a similar vein, nothing prevents Plaintiff from speaking with other voters in his community. If Plaintiff wants to engage in political discussion, he has every right to do so. He just may not do so on school property. Again, Plaintiff cites no authority for the notion that there is a constitutional right to speak with a candidate on Election Day, especially at a specific location.

With regard to all the voting procedures available to Plaintiff, arguments that the alternative methods of voting are constitutionally insufficient have been previously

7

briefed and rebutted by Defendants and, as such, will be addressed only briefly here. (ECF 65, pp. 7-9, 11-6; ECF 73, pp. 3-13.)

Defendants would note that while Plaintiff contends the need to find a friend to aid him in traveling to the Montpelier Civic Center "each and every time he wanted to vote," such a burden remains an insignificant one upon his voting rights. (ECF 75, p. 8, n. 5.) Election Days happen less than a handful of times throughout the year and some years have no elections at all. Many voters make plans ahead of time to vote when it is sometimes inconvenient, but inconveniences do not always constitute violations of constitutional rights. "[U]navoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate policy, do not violate equal protection." *Griffin*, 385 F.3d at 1132. Further, if Plaintiff is unable to get to the Montpelier Civic Center, he can vote by mail or by in-person absentee ballot as discussed in previous briefing.

With regard to absentee voting, Plaintiff claims that he has "introduced evidence of the substantial burden that he faces by being barred from voting in person," (ECF 75, p. 11), however, such evidence amounts to nothing more than Plaintiff's personal beliefs and opinions regarding absentee voting. When asked if there was any reason he could not go to the courthouse to vote, Plaintiff stated, "No, nothing more than my inherent dislike for courts and law enforcement, in general." (Valenti Dep. p. 21: 19-23.) When asked why absentee voting by mail is insufficient, Plaintiff stated two reasons:

A) I like to communicate with other people to see if what I'm thinking might be what the general crowd is thinking. And plus, when it comes to elections, I always think of Florida and Governor Bush and how

8

> twice, you know, things—voter registrations disappeared. You have no—I know that if I scribbled it in myself or I hit a button, I know that it's—you know, unless something major happens, I know it's going to get counted.

(Valenti Dep. p. 38:23-39:8.) Plaintiff relies upon his own personal belief that absentee voting is insufficient and cases which have not held that absentee voting is a constitutionally deficient manner of exercising the right to vote. Such evidence is insufficient to carry his burden of proof on his claim that the burden upon his voting rights outweighs the State's justification in barring serious sex offenders from school property.

Lastly, Plaintiff takes issue with the Defendants' arguments that the relatively small number of people who are affected by Indiana Code § 35-42-4-14 lessen the burden to be weighed against the State's justification. (ECF 75, p. 12.) In *Crawford*, the Seventh Circuit noted that the fewer people burdened by the law, the less total burden to weigh against a law's justification. *Crawford v. Marion County Election Board*, 472 F.3d 949, 952 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008). Plaintiff rebuts this case law by citing to *Whole Women's Health v. Hellerstedt*, -- U.S. --, 136 S. Ct. 2292, 2320 (2016) *as revised* (June 27, 2016). Plaintiff argues that measuring the number of individuals affected by Indiana Code § 35-42-4-14 against the general population is inappropriate and that language from abortion rights cases indicates that the proper denominator is the amount of individuals for whom the statute actually inhibits from voting in a polling location. (ECF 75, p. 12) (citing *Whole Women's Health*, 136 S. Ct. at 2320 (citing *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 878 (1992))).

9

Defendants would point out that the *Whole Women's Health* decision regarded abortion rights and not voting rights, but the point is that there is not a substantial bloc of voters that are known to be affected by this law in the same manner that the Plaintiff is. Regardless of the "proper denominator," there are only 6,122 individuals who meet the definition of "serious sex offender" as defined by Indiana Code § 35-42-4-14. (ECF 73-1, Affidavit of Brent Myers ¶ 3.) It is unknown how many of those individuals are registered to vote, let alone how many of those individuals have the option of voting at either a polling location or vote center which is located in a school. Plaintiff has brought forth no evidence that anyone other than Mr. Valenti himself is affected by Indiana Code § 35-42-4-14. As such, Defendants' argument that the law affects a relatively small number of individuals and thereby reduces the burden to be weighed against the State's justification, has merit.

**B. The minimal burden imposed on Plaintiff is justified by the State's interest in protecting schoolchildren from sex offenders.**

Plaintiff claims, "The State has not put forth a legitimate state interest that is sufficiently weighty to justify the significant burden on Mr. Valenti's voting rights posed [by] the challenged law's complete ban on his voting at the high school." (ECF 75 p. 13.) The State's interest has been discussed at length in previous briefing. (ECF 65, pp. 16-19; ECF 73, pp. 13-16.) It is clear that the State's interest in protecting youth from sex offenders far outweighs the minimal burden imposed upon the Plaintiff.

Plaintiff contends there is no logical reason why school children, who are not permitted to be unaccompanied in the voting area pursuant to statute, would be at risk

on Election Day. (ECF 75. p. 14-15.) However, there is no guarantee that children at the polls on Election Day will be accompanied by anyone at all, just as children being accompanied at all times throughout a regular school day is not guaranteed. Plaintiff is simply speculating, without any authority or support, that children will be accompanied at the polls and around the school, and that risk to the children is virtually non-existent on Election Day. ("The risk to children of being solicited by sex offenders while in school is low to begin with, but on election day it is virtually non-existent." (ECF 75, p. 14.) Plaintiff wants to socialize and discuss issues with his community, which contradicts the thrust of his argument that he simply wants to go to the school to vote. Plaintiff offers that a school is a "highly regulated place" and that schools often have "strict check-in procedures and their own security guards" without any support or evidence. (ECF 75, p. 14.)

Plaintiff cites to his other lawsuit, *Valenti v. Hartford City, Indiana,* to show that there is no justification for barring a sex offender from school property, but fails to mention that the Hartford City ordinance ("Ordinance") in that action prohibited a great deal more activity than Indiana Code § 35-42-4-14. 2016 WL 7013871, at *1-2 (N.D. Ind. Dec. 1, 2016). The Ordinance prevented Plaintiff from loitering on a public way within 300 feet of a Child Safety Zone which vaguely included:

> public parks, private and public schools, public library, amusement arcades, video arcades, indoor and outdoor amusement centers, amusement parks, public or commercial and semi-private swimming pools, child care facility, child care institution, public or private athletic complexes, crisis center or shelter, skate park or rink, public or private youth center, movie theatre, bowling alley, scouting facilities, and Office of Protective Services.

Hartford City, Ind., Ordinance 2008-1, § 8.50.2. The Ordinance even led to Plaintiff's citation while sitting in the passenger seat of his brother's car in his brother's own driveway. *Valenti*, 2016 WL 701387`, at *2. The Ordinance was found unconstitutional on both ex post facto and vagueness grounds. *Id.* at *1. Indiana Code § 35-42-4-14 is far less expansive by comparison and while the court in that case noted that Plaintiff would be unable to enter school property, it was just one example of the many restrictions imposed by the overreaching and excessive Ordinance. *Id.* at *8.

The case at hand differs greatly because while Plaintiff cannot enter the school for the purpose of voting, his burden is alleviated by the numerous alternatives he may use to exercise his right to vote. As noted in previous briefing (ECF 73, pp. 14-15), Indiana Code § 35-42-4-14 has been upheld under a similar ex post facto analysis that was used in *Valenti v. Hartford City* in the case of *McVey v. State*, 56 N.E.3d 674, 681 (Ind. Ct. App. 2016.) The plaintiff in the *McVey* case wanted to enter a school to take a commercial driver's license class. *Id.* at 677 n.6. The Indiana Court of Appeals noted that the plaintiff did "not allege that this is the only place where he can take that class." *Id.* at 681. Further, the court gave the most weight to the excessiveness factor and stated that "although the unlawful-entry statute . . . also applies to sexually violent predators (which can include defendants convicted of sex crimes not involving children), McVey was convicted of child molesting, which is a crime against children." *Id.* The court gave the most weight to the fact that McVey had committed a crime against a child and found that Indiana Code § 35-41-4-14 did not violate the prohibition on ex post facto laws. *Id.*

12

Similarly, Plaintiff in this case cannot show that the High School is the only place that he can vote because he can vote at the Montpelier Civic Center, the county clerk's office, or via mail-in absentee ballot. Further, Plaintiff committed the felony of "Lewd or Lascivious Acts with Child Under 14 Years" in California, which is a crime against a child. (ECF 28, ¶ 21; Valenti Dep., p. 11:1-23.) As applied to Plaintiff, it can hardly be said that the law is excessive or unjustified.

None of the case law cited by the Plaintiff supports his position that the challenged law is unjustified. As the *McVey* court noted, the law is especially justified as applied to those who have committed crimes against children. *McVey*, 56 N.E.3d at 681. Indiana Code § 35-42-4-14 is justified by the compelling government interest in protecting children from serious sex offenders as discussed above and in Defendants' previous briefing. (ECF 65, pp. 16-19; ECF 73, pp. 13-16.) Plaintiff's arguments to the contrary cannot stand.

Plaintiff spends the final portion of his brief arguing that under the flexible *Burdick* standard, the State's interest in protecting children is outweighed by the burden imposed by exercising his right to vote via mail-in absentee ballot, in-person absentee ballot, or driving to the Montpelier Civic Center.

As noted above, because the burden upon Plaintiff's right to vote is less than severe, the State's interests are given more deference. *One Wisc.*, 2016 WL 4059222 at *26 (citing *Anderson*, 460 U.S. at 788). Ultimately, *Burdick* is a flexible standard and the Court must weigh the burdens of the law against the State's interests. *Crawford*, 553 U.S. at 190.

Much of Plaintiff's narrow tailoring argument has been addressed already, but Defendants would again reiterate that Plaintiff is not in a similar situation to the plaintiffs in *Does I-IV v. City of Indianapolis*, 2006 WL 2927598 (S.D. Ind. Oct. 5, 2006). In that case, one of the plaintiffs was barred from his polling location in a school because of a sex offender ordinance, but he was additionally unable to vote by absentee ballot. *Id.* at 4-5, 10. Since that case, the General Assembly has eased the burden upon sex offenders' rights to vote by allowing serious sex offenders to vote by absentee ballot. *See* Ind. Code § 3-11-10-24(a)(12). The legislature exercised its proper authority in determining who may or may not vote by absentee ballot as discussed in *Griffin*, 385, F.3d at 1131.

Plaintiff again cites to *Doe v. Prosecutor, Marion County Ind.*, 705 F.3d 694, 697-98 (7th Cir. 2013), which overturned a blanket ban on all social media for sex offenders. Plaintiff, however, leaves out language from that opinion where the Seventh Circuit cautioned that a state law "need not be the least restrictive or least intrusive means" in pursuing their goals. *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). "[T]he Constitution tolerates some over-inclusiveness if it furthers the state's ability to administer the regulation and combat an evil." *Id.* at 700.

Lastly, laws that were passed in Idaho and North Dakota are irrelevant to the question of whether Indiana Code § 35-42-4-14 unconstitutionally burdens Plaintiff's voting rights. Plaintiff may believe that allowing an exception in Indiana Code § 35-42-4-14 for voting would create a better statute, but the General Assembly disagreed and ostensibly felt that children would still be in danger on Election Day. Therefore,

Indiana law allows Plaintiff to exercise his right to vote by mail-in absentee ballot, at the other vote center in his county, or by in-person absentee ballot at the courthouse, mere steps from his home.

In sum, Plaintiff has failed to show that the burden upon his voting rights is severe, which mandates more deference to the State's interests in passing Indiana Code § 35-42-4-14. Plaintiff's burdens are alleviated by the multitude of options available to him in order to exercise his right to vote. The flexible *Burdick* standard allows reasonable regulations of elections and does not require a narrow tailoring analysis. Plaintiff cannot show that the burden upon his voting rights imposed by the challenged statute outweigh the State's justification in barring sex offenders from school property. The law is constitutional under the First and Fourteenth Amendments.

## CONCLUSION

For the reasons above, Defendants request that Plaintiff's Motion for Summary Judgment be denied and that their own Motion for Summary Judgment be granted.

Respectfully submitted,

CURTIS T. HILL, Jr.
Attorney General of Indiana
Attorney No. 13999-20

By: *s/Drew Farrington*
Drew Farrington
Deputy Attorney General
Attorney No. 34006-49

Office of the Indiana Attorney General
Indiana Government Center South, 5th Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Phone:   (317) 234-5393
Fax:     (317) 232-7979
Email:   [Christopher.Farrington@atg.in.gov](Christopher.Farrington@atg.in.gov)

# CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2017, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification to the following:

Kenneth J. Falk  
ACLU OF INDIANA  
Email: kfalk@aclu-in.org

Jan. P. Mensz  
ACLU OF INDIANA  
Email: jmensz@aclu-in.org

*s/ Drew Farrington*  
Drew Farrington  
Deputy Attorney General

OFFICE OF THE INDIANA ATTORNEY GENERAL  
Indiana Government Center South, 5th Floor  
302 W. Washington Street  
Indianapolis, IN 46204-2770  
Phone:   (317) 234-5393  
Fax:       (317) 232-7979  
Email:    Christopher.Farrington@atg.in.gov