UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRIAN VALENTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:15-cv-1304-WTL-MPB |
| | ) |
| INDIANA SECRETARY OF STATE in her official capacity, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This cause is before the Court on the Defendants' motion for summary judgment (Dkt. No. 64) and the Plaintiff's cross-motion for summary judgment (Dkt. No. 66). The motions are fully briefed, and the Court, being duly advised, now **GRANTS** the Defendants' motion and **DENIES** the Plaintiff's motion for the reasons set forth below.

### I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The parties agree that the material facts in this case are undisputed. *See* Dkt. Nos. 67 at 2, 8; 73 at 2.[1] In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed, and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th

---

[1] The Court notes that the Plaintiff had argued that it was difficult for him to get to the Montpelier Civic Center because he did not have reliable transportation. "[The] Defendants contest[ed] [the] Plaintiff's allegation that his Chevy Cavalier is inoperable and cannot be driven a distance of 12 miles." Dkt. No. 73 at 2. That fact, however, is no longer in dispute. The Plaintiff notified the Court on May 4, 2017, that he now has a reliable vehicle. Dkt. No. 77. Plaintiff's counsel informed defense counsel of this fact. *Id.*

Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). When the Court reviews cross-motions for summary judgment, as is the case here, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Speciale v. Blue Cross & Blue Shield Ass'n*, 538 F.3d 615, 621 (7th Cir. 2008) (quotation omitted).

## II. BACKGROUND

The Plaintiff is a registered voter, living in Hartford City, Blackford County, Indiana. He challenges Indiana Code section 35-42-4-14 as it applies to his right to vote. The statute prohibits persons meeting the definition of "serious sex offender" from knowingly or intentionally entering school property. Ind. Code § 35-42-4-14. The Plaintiff, who meets the definition of "serious sex offender" under the statute, contends that his First and Fourteenth Amendment rights are violated by the law because he cannot vote on election days at the polling place closest to his home, the Blackford County High School Auxiliary Gym ("High School"). The Plaintiff may, however, vote on election days at Blackford County's other polling place, the Montpelier Civic Center, which is located nine miles farther from the Plaintiff's home than is the High School. The Plaintiff can also choose to cast an absentee ballot prior to an election day, either by mail or in person, at the Blackford County Circuit Court Clerk's office, which is 500 yards from the Plaintiff's home. The Plaintiff voted in the 2016 presidential election by voting absentee by mail.

## III. DISCUSSION

The Plaintiff maintains that Indiana Code section 35-42-4-14 "unjustifiably burdens [his] right to vote," Am. Compl. ¶ 63, because he is prohibited from voting on election days at the closest polling place to his home because it is a school. "'States may prescribe [t]he Times,

Places and Manner of holding Elections for Senators and Representatives, Art. I, § 4, cl.1,' and the Supreme Court has recognized that States retain the power to regulate their own elections." *Common Cause Ind. v. Individual Members of the Ind. Election Comm'n*, 800 F.3d 913, 916 (7th Cir. 2015) (quoting *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)) (internal quotation marks omitted). The Supreme Court also recognizes that "'voting is of the most fundamental significance under our constitutional structure.'" *Burdick*, 504 U.S. at 433 (quoting *Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 184 (1979)). "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the ballot are absolute." *Id.* (citing *Munro v. Socialist Workers Party*, 479 U.S. 189, 193 (1986)).

In this case, the parties agree that the "flexible" *Burdick* standard should apply to analyzing the Plaintiff's challenge to the application of Indiana Code section 35-42-4-14 to his ability to vote at the High School. *See* Dkt. Nos. 67 at 9-10, 73 at 2-3. Therefore, the Court applies this standard. Under the *Burdick* standard, the "rigorousness of [the Court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 428. The Supreme Court in *Burdick* explained as follows:

> A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* at 434 (internal quotation omitted). "However slight that burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)).

Although Indiana Code section 35-42-4-14 is not an election law, it has the effect of prohibiting serious sex offenders from voting on school properties. For the Plaintiff, this means the burden of having to drive nine miles farther to vote on election days.[2] This is the only burden that impacts the Plaintiff's right "'to cast [his] vote[] effectively.'" *Common Cause Ind.*, 800 F.3d at 917 (quoting *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)). This burden, however, is very minimal, particularly now that the Plaintiff has reliable transportation. The Indiana Court of Appeals has stated that "[t]here is no doubt that [Indiana Code section 35-42-4-14] has a purpose[,] . . . that being to promote public safety and to protect children." *Kirby v. State*, --- N.E.3d ----, 2017 WL 3754902, at *5 (Ind. Ct. App. Aug. 31, 2017). In light of the minimal burden on the Plaintiff, the State's legitimate interests in promoting public safety and protecting children are reasonable and sufficient to justify the restriction under the circumstances of this case. *See Burdick*, 504 U.S. at 434 ("the State's important regulatory interests are generally sufficient to justify [reasonable, nondiscriminatory] restrictions") (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). Therefore, the Plaintiff's as-applied challenge to Indiana Code section 35-42-4-14 fails.

In addition to the minimal burden of driving nine miles, the Plaintiff contends that, if he must vote in Montpelier or by absentee ballot in person or by mail, he "will be deprived of the important associational and expressive aspects of voting in person on an election day at one's

---

[2] Alternatively, he could vote by absentee ballot in person or by mail. The Plaintiff argues that these methods of voting are inadequate substitutes for voting at the High School. Dkt. No. 67 at 6. He cites deficiencies with voting early and absentee by mail, namely, that he would "miss out on late-breaking political news prior to the election" and argues that there are greater risks that a mail-in ballot would not be counted for some reason. Dkt. No. 67 at 7. While the Seventh Circuit discussed these concerns in *Griffin v. Roupas*, 385 F.3d 1128 (7th Cir. 2004), where a group of working mothers sought to require Illinois to allow them to vote by absentee ballot, they need not be examined here. The Plaintiff is not required to vote by absentee ballot. He can vote in person at a polling place on election day, thereby avoiding these risks.

community polling place." Dkt. No. 67 at 8. He states that he "view[s] voting as a celebration of [his] constitutional right, and it is something [he] think[s] should be shared publicly with [his] community." Dkt. No. 66-1 at 2. He goes on to say that "[i]t is an opportunity to express [himself] politically, beyond just having [his] vote counted, and to hear from others." *Id.* He alleges that, "[i]n the past, local candidates have been present outside of the High School greeting voters and handing out literature on election day. They are available if voters would like to ask them questions." Am. Compl. ¶ 28. He contends that "Local Hartford City candidates are less likely to visit the vote center in Montpelier because their constituents are unlikely to be in Montpelier." Am. Compl. ¶ 34. Because the Plaintiff can only vote on an election day at the Montpelier Civic Center, he "feels like he is being banished from his community on election day by being forced to vote in another town where he knows no one." Dkt. No. 67 at 6 (citing Dkt. No. 66-1 at 4).

The Plaintiff has not pointed to any case law suggesting that the First Amendment guarantees his right to associate with a certain group of people at a chosen polling place on election day. In any event, the burden on the Plaintiff's right to enjoy these specific "associational and expressive aspects of voting" is very narrow. He maintains the ability to associate with his community and discuss politics away from school property, including with those who also vote at the Montpelier polling location, to the extent association and expression are permitted there by Indiana law.³ Additionally, the minimal burden the Plaintiff faces in these respects is outweighed by the State's interests as defined above.

---

³ The Court notes that Indiana law places restrictions on political speech, and communication generally, at polling locations. Indiana Code section 3-14-3-16(b)(1) makes it illegal to electioneer within the polls and "the area or pathway that extends fifty (50) feet in length, measured from the entrance to the polls." *See* Ind. Code § 3-5-2-10 (defining the "chute"). This includes "expressing support or opposition to any candidate or political party or

5

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment (Dkt. No. 64) is **GRANTED**, and the Plaintiff's motion for summary judgment (Dkt. No. 66) is **DENIED**. Judgment consistent with this Entry shall now issue.

SO ORDERED: 9/28/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.

---

expressing approval or disapproval of any public question in any manner that could reasonably be expected to convey that support or opposition to another individual" and also "wearing or displaying an article of clothing, sign, button, or placard that states the name of any political party or includes the name, picture, photograph, or other likeness of any currently elected federal, state, county, or local official." Ind. Code § 3-14-3-16.

Until recently, Indiana law prohibited voters from even "convers[ing] or communcat[ing] with a person other than a member of the precinct election board while at the polls." Ind. Code § 3-11-8-18 (corresponding to P.L. 5-1986, Sec. 7). Effective July 1, 2015, this particular law is less restrictive: Although still entitled, "[v]oter not to converse with any person except precinct election board member," the law now provides only that "[a] voter or person offering to vote may not converse or communicate in a loud or disruptive manner while at the polls." Ind. Code § 3-11-8-18 (eff. July 1, 2015).